UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 26-41318-pwb |
| **Lriv Investments Inc,** | : | CHAPTER 11 |
| Debtor. | : | |
| **Select Portfolio Servicing, Inc., as servicing agent for U.S. Bank Trust Company, National Association, not in its individual capacity but solely as trustee for COLT 2024-INV2 Mortgage Loan Trust**, | : | |
| Movant, | : | |
| v. | : | CONTESTED MATTER |
| **Lriv Investments Inc**, **Debtor.** | : | |
| Respondents. | : | |

**<u>NOTICE OF HEARING</u>**

**PLEASE TAKE NOTICE** that ***Select Portfolio Servicing, Inc., as servicing agent for U.S. Bank Trust Company, National Association, not in its individual capacity but solely as trustee for COLT 2024-INV2 Mortgage Loan Trust ("Movant")*** has filed a ***Motion for Relief from Stay (the "Motion")*** and related papers with the Court seeking an order ***granting relief from the automatic stay***.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the ***Motion*** at ***9:25 A. M***. on ***September 30, 2026*** in Courtroom ***342***, United States Courthouse, 600 East First Street, Rome, GA 30161, which must be attended in person unless otherwise ordered by the Court.

Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not

want the Court to grant the relief sought in these pleadings or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleadings with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk before the hearing. The address of the Clerk's Office is: Clerk, U. S. Bankruptcy Court, 600 East First Street, Rome, GA 30161. You must also mail a copy of your response to the undersigned at the address stated below.

***If a hearing on the Motion cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the Motion and agrees to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.***

Dated: 08/31/2026

**Robertson, Anschutz, Schneid, Crane & Partners, PLLC**

/s/ Willie B. Smith
Willie Bruce Smith
Georgia Bar # 507412
13010 Morris Rd.,Suite 450
Alpharetta, GA 30004
Telephone: 470-321-7112
Fax: 404-393-1425
Email: wismith@raslg.com

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 26-41318-pwb |
| | : | |
| **Lriv Investments Inc,** | : | CHAPTER 11 |
| | : | |
| Debtor. | : | |
| | : | |
| **Select Portfolio Servicing, Inc., as servicing agent for U.S. Bank Trust Company, National Association, not in its individual capacity but solely as trustee for COLT 2024-INV2 Mortgage Loan Trust**, | : | |
| | : | |
| Movant, | : | |
| v. | : | CONTESTED MATTER |
| | : | |
| **Lriv Investments Inc**, **Debtor.** | | |
| | : | |
| Respondents. | : | |
| | : | |

**MOTION FOR RELIEF FROM AUTOMATIC STAY**

COMES NOW, Select Portfolio Servicing, Inc., as servicing agent for U.S. Bank Trust Company, National Association, not in its individual capacity but solely as trustee for COLT 2024-INV2 Mortgage Loan Trust, (hereinafter referred to as "Movant"), by and through its undersigned counsel, moves for relief from the automatic stay and alleges as follows:

1.

The Court has jurisdiction over this matter pursuant to 11 U.S.C. § 362, FRBP 4001(a), and the various other applicable provisions of the United States Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the laws of the United States of

America.

2.

Lriv Investments Inc, (hereinafter referred to as “Debtor”, filed a petition for relief under Chapter 11 of the Bankruptcy Code on August 04, 2026.

3.

Movant is the holder or servicer of a loan secured by certain real property in which the Debtor has an interest. Movant holds a security interest in the Debtor’s real property now or formerly known as **6873 Greenwich Ln, Dallas, Texas 75230** (hereinafter referred to as “Property”) by virtue of a Security Deed dated February 29, 2024. Said Security Deed secures a Note in the original principal amount of $1,004,250.00. The promissory note has been duly endorsed.

Select Portfolio Servicing, Inc. is the servicer of the loan described in the Note and Mortgage and, as such, has the authority to initiate the instant action and any foreclosure on the Creditor’s behalf**.**

4.

Movant alleges that the Debtor is in default to Movant under the terms of the loan documents, having failed to make certain mortgage payments that have come due. As of August 14, 2026, the total due owed to Movant is $72,212.42 and consists of three (3) monthly mortgage payments at $8,594.79 each for January 1, 2026 to March 1, 2026, and five (5) monthly mortgage payments at $9,285.61 each for April 1, 2026 to August 1, 2026. An additional payment will come due September 1, 2026 and on the first day of each month thereafter until the loan is paid in full.

5.

The current unpaid principal balance due under the loan documents is

approximately $1,004,249.16. The Property is most recently valued at $1,214,890.00 by the Dallas County Tax Assessor's Office.

6.

Movant's security interest in the Property is not adequately protected due to the Debtor's failure to maintain the mortgage payments.

7.

Movant has incurred attorney's fees and costs as a result of filing this motion. These fees and costs are recoverable pursuant to the loan documents, and Movant seeks leave to recover these fees and costs under the remedies available therein.

8.

Pursuant to 11 U.S.C. § 362, Movant alleges that sufficient cause, including lack of adequate protection, exists for the automatic stay to be terminated.

WHEREFORE, Movant respectfully prays to the Court as follows:

(a) That the automatic stay under 11 U.S.C. § 362 be modified to allow Movant to pursue state remedies to protect its security interest in the Property, including, but not limited to, advertising to effectuate a foreclosure sale and gaining possession of the Property; to contact the Debtor via telephone or written correspondence to discuss potential loan workout or loss mitigation opportunities; and to perform property preservation as appropriate;

(b) That Movant's attorney's fees and costs incurred in filing and prosecuting this Motion be recoverable as pursuant to the loan

documents and remedies available therein;

(c) That the fourteen (14) day stay of Bankruptcy Rule 4001(a)(4) be waived;

(d) That Movant be permitted to offer and provide Debtor(s) with information regarding a potential forbearance agreement, loan modification, refinance agreement, or other loan workout/loss mitigation agreement, and to enter into such an agreement with Debtor.

(e) For such other and further relief the Court deems just and proper.

Date: 08/31/2026

**Robertson, Anschutz, Schneid, Crane & Partners, PLLC**

/s/ Willie B. Smith_
Willie Bruce Smith
Georgia Bar # 507412
13010 Morris Rd.,Suite 450
Alpharetta, GA 30004
Telephone: 470-321-7112
Fax: 404-393-1425
Email: wismith@raslg.com

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 26-41318-pwb |
| | : | |
| **Lriv Investments Inc,** | : | CHAPTER 11 |
| | : | |
| Debtor. | : | |
| ______________________________ | : | |
| | : | |
| **Select Portfolio Servicing, Inc., as servicing agent for U.S. Bank Trust Company, National Association, not in its individual capacity but solely as trustee for COLT 2024-INV2 Mortgage Loan Trust**, | : | |
| | : | |
| Movant, | : | |
| v. | : | CONTESTED MATTER |
| | : | |
| **Lriv Investments Inc**, **Debtor.** | | |
| | : | |
| Respondents. | : | |
| ______________________________ | : | |

**Certificate of Service**

I hereby certify that on the ***31st*** day of ***August 2026,*** I electronically filed the foregoing ***Motion for Relief from Stay and Notice of Hearing*** using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this document and an accompanying link to this document to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing program:

***Alan Hinderleider,*** *Office of the United States Trustee*

I further certify that on this day I caused a copy of this document to be served via ***United States First Class Mail,*** on the following parties at the address shown for each.

Lriv Investments Inc
265 Hillcrest Circle
Hiram, GA 30141

***U.S. Trustee***
Office of the United States Trustee
362 Richard B. Russell Building
75 Ted Turner Drive, SW
Atlanta, GA 30303

Dated: 08/31/2026

**Robertson, Anschutz, Schneid, Crane & Partners, PLLC**

/s/ Willie B. Smith_
Willie Bruce Smith
Georgia Bar # 507412
13010 Morris Rd.,Suite 450
Alpharetta, GA 30004
Telephone: 470-321-7112
Fax: 404-393-1425
Email: wismith@raslg.com

# SUPPORTING DOCUMENTS

LOAN #: [redacted]
MIN: [redacted]

# INTEREST-ONLY PERIOD FIXED RATE NOTE

**February 29, 2024**
[Date]

**Irvine,**
[City]

**California**
[State]

**6873 Greenwich Ln, Dallas, TX 75230**
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$1,004,250.00** (this amount is called "Principal"), plus interest, to the order of the Lender The Lender is **American Heritage Lending, LLC..**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid I will pay interest at a yearly rate of **6.999 %.**

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month This payment will be for interest only for the first **120** month(s), and then will consist of principal and interest.

I will make my monthly payment on the **1st** day of each month beginning on **April 1, 2024.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest it will be applied to interest before Principal. If, on **March 1, 2064,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **19800 MacArthur Blvd, Suite 950**
**Irvine, CA 92612**

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. **$5,857.29** for the first **120** month(s) of this Note, and thereafter will be in the amount of U.S. **$6,680.63.** The Note Holder will notify me prior to the date of change in monthly payment

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes However, if the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest as well as during the time that my payments consist of principal and interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, the amount of my monthly payment will not decrease; however, the principal and the interest required under this Note will be paid prior to the Maturity Date **PLEASE REFER TO THE ATTACHED PREPAYMENT ADDENDUM WHICH AMENDS AND MODIFIES THE TERMS HEREOF AND IS HEREBY INCORPORATED BY THIS REFERENCE.**



[redacted]

LOAN #:[redacted]

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5 000 %** of my overdue payment of interest and/or principal and interest. I will pay this late charge promptly but only once on each late payment. **LATE CHARGE WILL NOT EXCEED $397.72.**

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note The Note Holder may enforce its rights under this Note against each person individually or against all of us together This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note Some of those conditions are described as follows:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
>
> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which



[redacted]

**LOAN #:** [redacted]

Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

____________________________________ (Seal)
**LRIV INVESTMENTS INC. - MICHAEL LU - DIRECTOR**

**Lender: American Heritage Lending, LLC.**
**NMLS ID:** [redacted]
**Loan Originator: Todd Alan Handley Jr.**
**NMLS ID:** [redacted]

**PAY TO THE ORDER OF:**
**WITHOUT RECOURSE**
**American Heritage Lending, LLC., a Delaware Limited Liability Company**

**BY:** ____________________________

**Michael Hill**
TITLE: ~~VP, Operations~~

**[Sign Original Only]**



[redacted]

**PREPAYMENT ADDENDUM**

**FIXED PERCENTAGE**

4. **BORROWER'S RIGHT TO PREPAY:**

Borrower may prepay the Loan in part or in full prior to the Maturity Date provided that Borrower:

a) shall provide Lender with written notice of (i) Borrower's intention to prepay the Loan in full by requesting a payoff letter or (ii) Borrower's making of a partial prepayment and the amount thereof; and

b) commencing on the date hereof and continuing until **04/01/2029** (the "Prepayment Term"), Borrower shall pay a prepayment premium to Lender simultaneously with the prepayment calculated on the amount prepaid as follows:

The prepayment charge shall be equal to **5.000%** of the amount prepaid. The prepayment charge shall be assessed if the Loan is paid due to sale or refinance of the Property.

Notwithstanding the above, a prepayment premium will not be assessed to Borrower:

c) as to payments from either casualty loss insurance proceeds or a condemnation award applicable to the Property, or

d) if a full prepayment is made during the ninety (90) day period immediately preceding the Maturity Date.

Any prepayment of principal resulting from an acceleration of the Loan following the occurrence of an Event of Default will incur a prepayment premium.

BORROWER:

**Signature:**

**Title** **LRIV INVESTMENTS INC. - MICHAEL LU - Director**

**Signature:**

**Title**

**Signature:**

**Title**

**Signature:**

**Title**

**Signature:**

**Title**

# ALLONGE TO NOTE

LOAN # [redacted]

LOAN AMOUNT **$1,004,250.00**

PROPERTY ADDRESS **6873 Greenwich Ln**
**Dallas, TX 75230**

ALLONGE TO NOTE DATED **February 29, 2024**

IN FAVOR OF **American Heritage Lending, LLC.**

AND EXECUTED BY **LRIV INVESTMENTS INC. - MICHAEL LU - DIRECTOR**

PAY TO THE ORDER OF

WITHOUT RECOURSE **American Heritage Lending, LLC.**

BY ______________________
**Michael Hill**
**VP, Operations**

TITLE ______________________



[redacted]

# LAST NAME

Liu

# LOAN #

[redacted]

# DOCUMENT

DOT

FTP

[redacted]

**Dallas County**
**John F. Warren**
**Dallas County Clerk**

**Instrument Number:** 202400044698

eRecording - Real Property

Recorded On: March 05, 2024 04:11 PM

Number of Pages: 16

**" Examined and Charged as Follows: "**

Total Recording: $81.00

************ THIS PAGE IS PART OF THE INSTRUMENT ************

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY because of color or race is invalid and unenforceable under federal law.

| | |
|---|---|
| **File Information:** | |
| Document Number: | 202400044698 |
| Receipt Number: | [redacted] |
| Recorded Date/Time: | March 05, 2024 04:11 PM |
| User: | Kevin T |
| Station: | CC123.dal.ccdc |

**Record and Return To:**
eRecording Partners
400 Second Avenue South

Minneapolis MN 55401




**STATE OF TEXAS**
**COUNTY OF DALLAS**

**I hereby certify that this Instrument was FILED In the File Number sequence on the date/time printed hereon, and was duly RECORDED in the Official Records of Dallas County, Texas.**

John F. Warren
Dallas County Clerk
Dallas County, TX

When recorded, mail to:
American Heritage Lending, LLC.
19800 MacArthur Blvd
Suite 950
Irvine, CA 92612
800-731-9226

[redacted]

This document was prepared by:
Kaiye Chen
American Heritage Lending, LLC, a Delaware limited liability company
19800 MacArthur Blvd
Suite 950
Irvine, CA 92612
949-317-4957

Title Order No.: [redacted]
Escrow No.: [redacted]
LOAN #: [redacted]

[Space Above This Line For Recording Data]

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

# DEED OF TRUST

MIN: [redacted]
MERS PHONE #: 1-888-679-6377

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16

(A) "Security Instrument" means this document, which is dated **February 29, 2024,** together with all Riders to this document.

(B) "Borrower" is **LRIV INVESTMENTS, INC., a Georgia Corporation.**

Borrower is the grantor under this Security Instrument

(C) "Lender" is **American Heritage Lending, LLC.,**

Lender is **a Delaware Limited Liability Company,** organized and existing

When recorded, mail to:
American Heritage Lending, LLC.
19800 MacArthur Blvd
Suite 950
Irvine, CA 92612
800-731-9226

This original document has been
ELECTRONICALLY RECORDED

This document was prepared by:
Kaiye Chen
American Heritage Lending, LLC, a Delaware limited liability company
19800 MacArthur Blvd
Suite 950
Irvine, CA 92612
949-317-4957

Title Order No.: [redacted]
Escrow No.: [redacted]
LOAN #: [redacted]

[Space Above This Line For Recording Data]

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

# DEED OF TRUST

MIN: [redacted]
**MERS PHONE #: 1-888-679-6377**

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "**Security Instrument**" means this document, which is dated **February 29, 2024,** together with all Riders to this document.

**(B)** "**Borrower**" is **LRIV INVESTMENTS, INC., a Georgia Corporation.**

Borrower is the grantor under this Security Instrument.

**(C)** "**Lender**" is **American Heritage Lending, LLC..**

Lender is **a Delaware Limited Liability Company,** organized and existing under the laws of **Delaware.**
Lender's address is **19800 MacArthur Blvd, Suite 950, Irvine, CA 92612**

Lender includes any holder of the Note who is entitled to receive payments under the Note.

**(D)** "**Trustee**" is **Republic Title of Texas, INC.**



[redacted]

LOAN #: [redacted]

Trustee's address is **3131 Turtle Creek Blvd. STE 101, Dallas, TX 75219.**

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated **February 29, 2024.** The Note states that Borrower owes Lender **ONE MILLION FOUR THOUSAND TWO HUNDRED FIFTY AND NO/100* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *** Dollars (U.S. **$1,004,250.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **March 1, 2064.**
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- ☐ Adjustable Rate Rider
- ☐ Condominium Rider
- ☐ Second Home Rider
- ☐ Balloon Rider
- ☐ Planned Unit Development Rider
- ☒ 1-4 Family Rider
- ☐ Biweekly Payment Rider
- ☐ V.A. Rider
- ☐ Other(s) [specify]

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan
**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **COUNTY**
[Type of Recording Jurisdiction]
of **Dallas**
[Name of Recording Jurisdiction]:
**Legal description of land: Being Lot 13, in Block 39A/7460, of PRESTON BROOK ESTATES, an Addition to the City of Dallas, Dallas County, Texas, according to the Map thereof recorded in Volume 30, Page 253, of the Map Records of Dallas County, Texas**

**Commonly known as: 6873 Greenwich Ln, Dallas, TX 75230**
**APN #: 00-00073-462-300-0000**

which currently has the address of **6873 Greenwich Ln, Dallas,**
[Street] [City]
Texas **75230** ("Property Address"):
[Zip Code]



[redacted]

LOAN #: [redacted]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property,and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority. (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall



[redacted]

LOAN #: [redacted]

apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of



[redacted]

the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the



[redacted]

LOAN #: [redacted]

insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then:



[redacted]

(a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument, (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that



[redacted]

LOAN #: [redacted]

time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products)

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.**

**If Lender invokes the power of sale, Lender, its designee, or Trustee shall give notice of the date, time, place and terms of sale by posting and filing the notice as provided by Applicable Law. Lender or its designee shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be public, occurring between the hours of 10 a.m. and 4 p.m. on a date and at a location permitted by Applicable Law. The time of sale must begin at the time stated in the notice of sale or not later than three hours after the stated time. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**25. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower s request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**26. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.



[redacted]

LOAN #: [redacted]

**27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:**

☐ **Purchase Money.**

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐ **Owelty of Partition.**

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☐ **Renewal and Extension of Liens Against Homestead Property.**

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐ **Acknowledgment of Cash Advanced Against Non-Homestead Property.**

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

**28. Loan Not a Home Equity Loan. The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

2-29-24 (Seal)

**LRIV INVESTMENTS INC. - MICHAEL LU - DIRECTOR** DATE

**State of ~~TEXAS~~ Washington** OH

**County of ~~DALLAS~~ King** OH

**This instrument was acknowledged before me on this 29 day of February, 2024 (date) by LRIV INVESTMENTS INC. - MICHAEL LU - DIRECTOR.**

NOTARY PUBLIC
STATE OF WASHINGTON
DAWNA HANSEN
License Number [redacted]
My Commission Expires 12-27-2026

**Notary Public's Signature**

**(Personalized Seal)**



[redacted]

LOAN #: [redacted]

**Lender: American Heritage Lending, LLC.**
**NMLS ID: [redacted]**
**Loan Originator: Todd Alan Handley Jr.**
**NMLS ID: [redacted]**



[redacted]

LOAN #: [redacted]
MIN: [redacted]

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this **29th** day of **February, 2024** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to **American Heritage Lending, LLC.**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: **6873 Greenwich Ln**
**Dallas, TX 75230**

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.



[redacted]

LOAN #: [redacted]

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument, (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.



[redacted]

LOAN #: [redacted]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

2-29-24 (Seal)

LRIV INVESTMENTS INC. - MICHAEL LU - DIRECTOR DATE



[redacted]

# RIDER TO THE DEED OF TRUST
# RENEWAL AND EXTENSION EXHIBIT

This RENEWAL AND EXTENSION EXHIBIT is incorporated into and shall be deemed to amend and supplement the Deed of Trust ("Security Instrument") of even date herewith. Security Instrument is granted by the Borrower(s) ("Borrower") to secure Borrower's indebtedness ("Note") to Lender (sometimes referred to as the "Beneficiary" or "Holder of the Note"), the Note secured hereby is in renewal and extension but not in extinguishment of that indebtedness, whether one or more, described as follows:

DEED OF TRUST LIEN
DATED: JANUARY 26, 2023
TRUSTEE: DON HARRIS
LIENHOLDER CIVIC FINANCIAL SERVICES, LLC
AMOUNT. $934,400.00
RECORDED: CC#202300019743
ASSIGNED TO: MORGAN STANLEY BANK, NA
DATED: AUGUST 23, 2023
RECORDED: CC#202300169608
DALLAS COUNTY, TEXAS

A PORTION OF THE PROCEEDS OF THE NOTE SECURED BY THIS DEED OF TRUST HAVING BEEN ADVANCED FOR THE PURPOSE OF SATISFYING ADDITIONAL AND REASONABLE COSTS AND/OR CLOSING COSTS NECESSARY TO REFINANCE SUCH DEBT(S) AND IS INCORPORATED AS PART OF THE INDEBTEDNESS SECURED HEREBY

THE LENDER HEREBY SECURED IS EXPRESSLY SUBROGATED TO ALL RIGHTS, LIENS, EQUITIES AND REMEDIES SECURING THE ORIGINAL HOLDER(S) OF SAID DEBT(S) AND THE ORIGINAL LIEN(S) SECURING THE SAME ARE HEREBY RENEWED AND EXTENDED TO DATE OF MATURITY OF THE INDEBTEDNESS HEREBY SECURED IN RENEWAL AND EXTENSION THEREOF. IN THE EVENT ANY PORTION OF THE SUMS INTENDED TO BE SECURED BY THE SECURITY INSTRUMENT CANNOT BE LAWFULLY SECURED THEREBY, PAYMENTS IN REDUCTION OF SUCH SUMS SHALL BE APPLIED FIRST TO THOSE PORTIONS NOT SECURED THEREBY. BORROWER(S) ACKNOWLEDGES THAT THE LIEN(S) SECURING THE PRIOR NOTE IS VALID, THAT IT SUBSISTS AGAINST THE PROPERTY, AND THAT BY THIS INSTRUMENT IT IS RENEWED AND EXTENDED IN FULL FORCE UNTIL THE NOTE IS PAID, EVEN THOUGH THE PRIOR LIEN(S) IS RELEASED AND NOT ASSIGNED TO LENDER.

______________________ (Seal) -Borrower
LRIV INVESTMENTS, INC
MICHAEL LU - DIRECTOR

______________________ (Seal) -Borrower

______________________ (Seal) -Borrower

______________________ (Seal) -Borrower

______________________ (Seal) -Borrower

______________________ (Seal) -Borrower

______________________ (Seal) -Borrower

______________________ (Seal) -Borrower

Recording Requested By:
Residential RealEstate Review

When Recorded Return To:

Residential RealEstate Review
Collateral Document Services
3217 S. Decker Lake Drive
Salt Lake City, UT 84119

[redacted]

**CORPORATE ASSIGNMENT OF DEED OF TRUST**

**Dallas, Texas**
**Residential RealEstate Review#:** [redacted]

**MIN #:** [redacted] **MERS Corporate Phone Number: 1-888-679-6377**

Date of Assignment: APR 27 2026
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS BENEFICIARY, AS NOMINEE FOR AMERICAN HERITAGE LENDING, LLC., ITS SUCCESSORS AND ASSIGNS at P.O. Box 2026, FLINT, MI 48501-2026
Assignee: U.S. Bank Trust Company, National Association, not in its individual capacity but solely as trustee for COLT 2024-INV2 Mortgage Loan Trust at c/o SELECT PORTFOLIO SERVICING, INC, 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT 84119

Executed By: LRIV INVESTMENTS, INC., A GEORGIA CORPORATION To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR AMERICAN HERITAGE LENDING, LLC., ITS SUCCESSORS AND ASSIGNS
Dated: 02-29-2024 Recorded: 03-05-2024 as Instrument No.: 202400044698 Book/Reel/Liber: N/A Page/Folio: N/A In the County of Dallas, State of Texas.

Property Address: 6873 GREENWICH LN, DALLAS, TX 75230

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Deed of Trust having an original principal sum of $1,004,250.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Deed of Trust.

TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever, subject to the terms contained in said Deed of Trust. IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS BENEFICIARY, AS NOMINEE FOR AMERICAN HERITAGE LENDING, LLC., ITS SUCCESSORS AND ASSIGNS
On APR 27 2026

By: [signature]
Jennifer C. Brown
Assistant Secretary




[redacted]

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 1

STATE OF Utah
COUNTY OF Salt Lake

On, APR 27 2026, before me, Shanda Swilor, a Notary Public in and for SALT LAKE in the State of UTAH, personally appeared Jennifer C. Brown, Assistant Secretary, of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS BENEFICIARY, AS NOMINEE FOR AMERICAN HERITAGE LENDING, LLC., ITS SUCCESSORS AND ASSIGNS, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

Shanda Swilor

SHANDA SWILOR
Notary Public State of Utah
My Commission Expires on:
Febraury 07, 2030
Comm. Number: 746999

[redacted]

**Dallas County**
**John F. Warren**
**Dallas County Clerk**

---

**Instrument Number:** 202600095399

eRecording - Real Property

Recorded On: May 05, 2026 09:44 AM

Number of Pages: 3

---

**" Examined and Charged as Follows: "**

Total Recording: $29.00

---

************** THIS PAGE IS PART OF THE INSTRUMENT **************

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY because of color or race is invalid and unenforceable under federal law.

**File Information:**

| | |
|---|---|
| Document Number: | 202600095399 |
| Receipt Number: | [redacted] |
| Recorded Date/Time: | May 05, 2026 09:44 AM |
| User: | Javen H |
| Station: | Cc136 |

**Record and Return To:**

Simplifile

---

**STATE OF TEXAS**
**COUNTY OF DALLAS**

**I hereby certify that this Instrument was** FILED **In the File Number sequence on the date/time printed hereon, and was duly** RECORDED **in the Official Records of Dallas County, Texas.**

John F. Warren
Dallas County Clerk
Dallas County, TX

SPS SELECT Portfolio SERVICING, inc.

**Financial Breakdown Statement**
Data date:08/14/2026 08:10:48AM
Loan Number: [redacted]

## Financial Breakdown Summary

**Borrower / Loan Information**

| | | | | | |
|---|---|---|---|---|---|
| Loan Number: | [redacted] | Loan Status: | BK11 | Interest Type: | VAR |
| Borrower: | INC, LRIV INVESTMENTS | Due Date: | 01/01/2026 | Modified Date: | MM/DD/YYYY |
| Co-Borrower: | LU, MICHAEL | MI Coverage: | No | Restricted Escrow | $0.00 |
| Address: | 6873 GREENWICH LN | Acquisition Date: | 05/09/2024 | BK Case #: | 26-41318 |
| City: | DALLAS | Maturity Date: | 03/01/2064 | BK Chapter: | 11 |
| State: | TX | Stop Adv date: | MM/DD/YYYY | BK Filing Date: | 08/04/2026 |
| County: | Dallas | Last Payment Date: | 01/16/2026 | Prepared Date: | 08/14/2026 |

**Financial Information**

| | | | |
|---|---|---|---|
| **Unpaid Principal Balance** | | | **$1,004,249.16** |
| | Principal Balance | $1,004,249.16 | |
| | Deferred Balance | $0.00 | |
| **Accrued Interest** | | | **$49,361.62** |
| | Interest From Date | 12/01/2025 | |
| | Good-thru Date | 08/14/2026 | |
| | Interest Rate | 6.99900% | |
| | Per Diem Rate | $192.57 | |
| **Escrow Advance Balance** | | | **$4,160.32** |
| | Taxes | $0.00 | |
| | Insurance | $4,160.32 | |
| | Escrow Refund/Disbursement | $0.00 | |
| | Mortgage Insurance | $0.00 | |
| MIP / PMI | | | **$0.00** |
| **Advance Balance** | | | **$219.00** |
| | Valuations | $99.00 | |
| | Preservation | $0.00 | |
| | Inspections | $120.00 | |
| | Postage | $0.00 | |
| | Misc. | $0.00 | |
| Late Charges | | | **$585.64** |
| NSF Fees | | | **$0.00** |
| Fax Fees | | | **$0.00** |
| Payoff Fees | | | **$0.00** |
| Interest on Advance | | | **$46.51** |
| Misc. | | | **$0.00** |
| Unapplied Funds | | | **$0.00** |
| **Total without Attorney fees** | | | **$1,058,622.25** |
| **Advance Balance - Excluded** | | | **$2,681.55** |
| | FC Fees | $2,185.00 | |
| | FC Costs | $496.55 | |
| | BK Fees | $0.00 | |
| | BK Costs | $0.00 | |
| **Total with Attorney fees** | | | **$1,061,303.80** |

**Foreclosure Name**

U.S. Bank Trust Company, National Association, not in its individual capacity but solely as trustee for COLT 2024-INV2 Mortgage Loan Trust

# Delinquency 1 - Primary Collection (DLQ1/COM2)

```
     [redacted]           QX   D E L I N Q U E N C Y  OWNR n/a 08/13/26  10:10:08
13-A CONV. RES. ARM      PER/CLS/OFF  B/  /SP AGE:  2Y  5M IR:  6.99900 INV: QU1
DUE(  8)     72,212.42  DUE 01/01/26(    )(01/29R) ASSUM:          ACQ:05/09/24
LATE CHRG       585.64  PAYMT      @   8,594.79 P: 6873 GREENWICH LN
BAD CK FEES        .00  L/C AMT          292.82    DALLAS TX 75230
OTHER FEES       46.51  PAYMT + LC     8,887.61 M:
TOT DUE      75,745.12* PRIN BAL   1004,249.16
SUSPENSE           .00  P&I            5,857.28    265 HILLCREST CIR
NET DUE      75,745.12  DLQ  3 TIME,PAY 13 DAY     HIRAM GA 30141
LRIV INVESTMENTS INC                                        [redacted]
MICHAEL LU

-IMD:N--------------------- * ADDITIONAL MESSAGES * -----------------WU: P ----
NEXT CONTACT DT 081726                 ACTIVE CH 11 BANKRUPTCY
CASHIER STOP 4                         SUSPENDED FORECLOSURE
-- Short Comments 2 ------------------------------------------------------------
 DATE  USR                      CONTACT RESPONSE REASON RECALL      F/B  REMIND

081426 (S6 BKRCY DOCMNT
081426 (S6 BKRCY DOCMNT
081326 (S6 OMBATPCUSDISP
081326 (S6 OMBATPCUSDISP
081326 (S6 CST COR FW AD
```

# Payoff Calculation Totals (PAY4/PG1)

```
[redacted]    AS-OF 08/14/26  PAYOFF CALCULATION TOTALS 08/13/26  10:11:33
NAME LI INC      CONTACT NAME LRIV INVESTMENTS INC
-------------------------------------------------------------------------------
PRINCIPAL BALANCE      1,004,249.16        ----------- RATE CHANGES ----------
INTEREST 08/14/26         49,361.62        INT FROM     RATE          AMOUNT
PRO RATA MIP/PMI                .00        12/01/25    6.99900       49,361.62
ESCROW ADVANCE             4,160.32        08/14/26
ESCROW BALANCE                  .00
SUSPENSE BALANCE                .00
HUD BALANCE                     .00
REPLACEMENT RESERVE             .00
RESTRICTED ESCROW               .00
TOTAL-FEES                    60.51
ACCUM LATE CHARGES           585.64
ACCUM NSF CHARGES               .00
OTHER FEES DUE                  .00
PENALTY INTEREST          50,212.46
FLAT/OTHER PENALTY FEE          .00        TOTAL INTEREST            49,361.62
CR LIFE/ORIG FEE RBATE          .00        TOTAL TO PAYOFF        1,111,530.26
RECOVERABLE BALANCE        2,900.55  NUMBER OF COPIES: 1    PRESS PF1 TO PRINT
                                           TOTAL PAGE 2                    .00

-------------------------------------------------------------------------------
```

# Payment Change Maintenance (PCH2/HPMT)

```
[redacted]              01/01/26  PAYMENT CHANGE MAINTENANCE  08/13/26 10:09:27
LI INC       1ST PMT 04/01/24  INV QU1/001  TYPE CONV. RES.    ARM       MAN B
M  LU        CUR PMT 01/01/26  PB    1004,249.16    IR  6.99900            GRP QP2
-- History of Payments ---------------------------------------------------------
PMT DT    01/01/26           04/01/26           09/01/26           09/01/27
    IR     6.99900            6.99900            6.99900            6.99900
   P&I    5,857.28           5,857.28           5,857.28           5,857.28
COUNTY    1,704.73           2,038.05           2,038.05           2,038.05
  CITY        0.00               0.00               0.00               0.00
HAZARD      666.92             786.46             786.46             786.46
    MI        0.00               0.00               0.00               0.00
  LIEN        0.00               0.00               0.00               0.00
    OS      365.86             603.82             352.23               0.00
  MISC        0.00               0.00               0.00               0.00

   A&H        0.00               0.00               0.00               0.00
  LIFE        0.00               0.00               0.00               0.00
  REPL        0.00               0.00               0.00               0.00
   HUD        0.00               0.00               0.00               0.00
 2 P&I        0.00               0.00               0.00               0.00
   NET    8,594.79           9,285.61           9,034.02           8,681.79
PAYMNT
CHANGE
REASON
```

# Payment Change Maintenance (PCH2/HPMT)

```
[redacted]          01/01/26  PAYMENT CHANGE MAINTENANCE  08/13/26 10:09:27
LI INC        1ST PMT 04/01/24  INV QU1/001  TYPE CONV. RES.    ARM      MAN B
M  LU         CUR PMT 01/01/26  PB   1004,249.16   IR  6.99900           GRP QP2
-- History of Payments --------------------------------------------------------
PMT DT     04/01/34
    IR     UNAV----
   P&I ----UNAV----
COUNTY     2,038.05
  CITY         0.00
HAZARD       786.46
    MI         0.00
  LIEN         0.00
    OS         0.00
  MISC         0.00

   A&H         0.00
  LIFE         0.00
  REPL         0.00
   HUD         0.00
 2 P&I         0.00
   NET
PAYMNT
CHANGE
REASON
```




Owner Search | Address Search | Account Search | Fiduciary Search

## Property Tax Balance

All tax information refers to the 2025 Tax Year, unless otherwise noted, i.e. "Prior Year Amount Due". Amounts due include penalty, interest,

**Account Number:** [redacted]

**Address:**
LRIV INVESTMENTS INC
6873 GREENWICH LN
DALLAS, TX 75230-0000

**Property Site Address:**
6873 GREENWICH LN, DA

**Legal Description:**
PRESTON BROOK ESTATES
BLK 39A/7460 LT 13
GREENWICH LN & FOREST LN
INT20210028515 DD09172021 CO-DC
7460 39A 01300 1007460 39A

**Current Tax Levy:** $24,456.65

**Current Amount Due:** $0.00

**Prior Year Amount Due:** $0.00

**Total Amount Due:** $0.00

eStatement Enrollment

**Enroll in eStatements to receive your Dallas Co**

**Market Value:** $1,214,890

**Land Value:** $440,640

**Improvement Value:** $774,250

**Capped Value:** $0

**Agricultural Value:** $0

**Exemptions:** NCAP

Current Tax Statement

Summary Tax Statement

Taxes Due Detail by Year and Jurisdiction

Payment Information

Composite Receipt (pending payments are not inclu

Request an Address Correction

Click Here to see your estimated amount due for a future date. You can see this information by year and by both year and jurisdiction.

*Make your check or money order payable to:*
***JOHN R. AMES, PCC, CTA, TAX ASSESSOR/COLLECTOR***
***Dallas County Tax Office***
***P O BOX 139066***
***DALLAS, TEXAS 75313-9066***

Go to Your Portfolio | Tax Office Home Page

Terms of Use Privacy Policy

**Disclaimer:** The Dallas County Tax Office provides this World Wide Web (WWW) site information and services "as is" without warranty of any kind, either expressed or implied. The Dallas County Tax Office does not warrant the accuracy, authority, completeness, usefulness, timeliness, or fitness officials and employees shall not be liable for any loss or injury caused in whole or part by its negligence, contingencies beyond its control, loss of data, or errors or omissions in the WWW site information or services.